FIRST NATIONAL BANK OF FLATONIA ET AL. v. THOMAS RATLIFF.

Decided October 21, 1903.

**Principal and Agent—Agent's Authority in Collection of Debts.**

The cashier of a bank is the collecting officer of such bank, and as such he has the power to enter into contracts looking to the collection of debts due the bank, and can, if the necessity arises, bind his principal to pay reasonable collection fees for the collection of its claims. The foreclosure of a mortgage to the bank on land to secure the claim of the bank, or the sale of the land under the mortgage, are steps in collection of the debt for which the cashier can legally contract commission fees to another for aid and assistance, and bind the bank therefor.

Appeal from the County Court of Brown. Tried below before Hon. S. C. Coffee.

*T. C. Wilkinson,* for appellants.

*Jenkins & McCartney,* for appellee.

FISHER, CHIEF JUSTICE.—This is an action by the appellee against the First National Bank of Flatonia and A. E. Noel, in the County Court of Brown County, to recover $265. In his petition it is substantially alleged that the bank is located in Fayette County, Texas, and that A. E. Noel resides in Brown County, Texas; that on or about July 12, 1901, Noel was the agent of appellant to sell a tract of land in Brown County, known as the McAnnally survey, and that on or about said time, Noel made an agreement with the bank, acting by and through its cashier, who then and there had the authority to make such an agreement, that he was to sell the land for the bank, and the bank was to pay him therefor for his services a commission of 5 per cent on the amount for which the land should be sold; that the bank was not the owner of the land, but held a mortgage on the same, and was interested in having the land sold, so as to pay off the mortgage debt, and that acting under such agreement made with the cashier, he sold the land for the sum of $5304.04, thereby earning his commission, which the bank refused to pay; and that for a valuable consideration, the said Noel transferred and assigned and guaranteed the payment of said claim against the bank to the appellee, who is the legal owner and holder of the same.

The defendant bank pleaded its privilege to be sued in Fayette County, and that the transfer was simulated for the purpose of giving the court jurisdiction; general demurrer and general denial of the authority of the cashier as agent of the bank to make the contract with Noel, as alleged in the appellee's petition.

Trial before the court resulted in a judgment overruling the plea of privilege and judgment in favor of appellee for the sum of $265. The findings of the trial court are as follows:

"1.   That at all the times hereinafter mentioned the P. McAnnally survey of land in Brown County, Texas, belonged to one M. F. Walker, and that said Walker was indebted to the First National Bank of Flatonia, Texas, in the sum of $6000, and that said bank held a mortgage executed by said Walker on said property to secure said indebtedness; and that one W. Willeford was the duly chosen and acting cashier of said bank.

"2.   That prior to the 12th of July, 1901, said Willeford, acting as such cashier for said bank, wrote various letters to A. E. Noel concerning the sale of said land; that said Willeford, acting as such cashier, in said letters asked the said Noel to find a purchaser for said land, and stated to the said Noel that said bank would pay him a commission of 5 per cent for making a sale of the same; that said Noel informed said cashier that he would not work or undertake to find a purchaser for said land for the owner thereof, but that he would undertake same for said bank and would look to said bank only for his commission; that said Willeford, acting as such cashier, agreed to said proposition of Noel; and about the 1st of July, 1901, said Noel went to Flatonia, Texas, and had an interview with said Willeford, and informed said Willeford that there was a shortage in the acreage of said survey; that said survey contained 1326 acres of land, and that he thought he could sell said land at $4 per acre; that said Willeford then and there informed him, said Noel, that said price would not pay the debt of the bank, but that he would call the board of directors together, and they would discuss the matter, and if in their judgment it was thought best to let the land go at that price, he would so inform said Noel; and that if they agreed that it was best to sell said land at said price, he would write said Noel to sell it.   That said Noel then and there told said Willeford that he would not undertake to find a purchaser for said land except at the instance of and in behalf of the said bank only, and that he would not work for the owner of said land, and said cashier then and there informed him that said bank would pay him a commission of 5 per cent for finding a purchaser for said land who would take it on terms agreeable to said bank.   Said cashier further stated to said Noel that the owner of said land would make a deed to the purchaser thereof at any price satisfactory to said bank.

"3.   That a few days thereafter, said cashier wrote to said Noel to the effect that said directors' meeting had been held and that the said terms of sale would be satisfactory to said bank, and for him, Noel, to negotiate a trade for said land at said price, and that his commission of 5 per cent would be paid by said bank, and that in said conversation with said Noel, and in correspondence said Willeford had with said Noel, he purported to act as cashier of said bank and in behalf of said bank. That thereupon, upon receipt of last named letter, said Noel made a contract with the plaintiff in this case, Thomas Ratliff, to sell said land at said price, and that under the terms of said sale, Ratliff was to have

possession of said land within sixty days thereafter, and that said contract with said Ratliff was made on the 12th day of July, 1901; and that a short time thereafter said cashier sent a deed to Brownwood, Texas, for said Ratliff, purporting to be signed by M. F. Walker, the owner of said land, which deed Ratliff was willing to accept, but it was never delivered to him.

"4. I further find that all of said times said land was under lease, and that said Willeford informed said Noel that he could obtain possession of said land after giving sixty days' notice to the lessee thereof, and that possession of said land would be given the purchaser thereof after the expiration of sixty days from said sale made of same. I further find that on the same day said sale was made, said Noel notified the lessee of said land that it had been sold, and asked that possession be delivered. I further find that at the expiration of sixty days from said sale day possession was demanded by Thomas Ratliff, the purchaser of said land, and that possession was refused and was never delivered to Thomas Ratliff, who was at all times ready, able and willing to pay for said land and take possession thereof, and comply in all respects with the contract of sale.

"5. I further find that said contract of sale was in writing, duly executed, and that the failure to consummate said sale was in nowise the fault of said Ratliff or said Noel, but alone the fault of said bank in not putting said Ratliff in possession. I further find that a part of the purchase money for said land was paid at the time of making the sale.

"6. That prior to the time of the institution of this suit, defendant A. E. Noel resided in Brown County, Texas, and the defendant bank resided and had its domicile in Fayette County, Texas.

"7. That prior to the filing of this suit the defendant A. E. Noel, for a valuable consideration, transferred and assigned his claim for said commission to the plaintiff and guaranteed its payment.

"8. Independent of the fact that the said W. Willeford was in fact cashier of said bank, and purporting to be acting for said bank in the negotiations with the defendant Noel, and the further fact that he stated to the defendant, Noel, that he was in favor of accepting the proposition of sale submitted by said Noel, but would rather call the directors of the bank together to pass on said proposed sale before accepting same, and the further fact that he stated by letter afterwards that he had called said directors together, and by said letter accepted said terms of sale, and again specifically agreed to pay Noel the 5 per cent commission; and the further fact that in pursuance of said contract, the said M. F. Walker shortly executed a deed for said land on the terms submitted by said Noel, I find no other facts in evidence showing direct authority from the directors of said bank to W. Willeford to make said contract with the defendant Noel.

"From the foregoing facts I deduce the following conclusions of law, viz:

"1. That the said W. Willeford, cashier of said bank, had the power and authority while acting in that capacity, and while doing the aforesaid acts, to bind the bank in making said contract with the defendant A. E. Noel to pay said Noel 5 per cent on the purchase price of said land for finding a purchaser therefor for said bank; and that said contract was in fact a contract for said bank, and that said bank thereby became indebted to said Noel in the sum of $265.20.

"2. That the defendant A. E. Noel, having in good faith, and for a valuable consideration, assigned and transferred to the plaintiff, Thomas Ratliff, his account or claim for said $265.20 against defendant bank, and by his indorsement having guaranteed the payment of said account, they, both said defendant bank and said A. E. Noel, became liable to the plaintiff for the amount of said debt, to wit, $265.20, and that this suit was properly brought therefor against both defendants in Brown County, Texas."

The only question to be considered is whether the cashier of the appellant's bank had the authority to make the contract sued upon. Although it is not necessary to a decision of this case, it may be determined, as contended for by the appellant, that a cashier has no authority, without the consent of the board of directors, to enter into a binding contract for the sale of lands belonging to the bank; but such is not the question here, for the bank did not own these lands, but simply had a mortgage interest in them to the extent of the amount of the debt secured. The cashier is the collecting officer of the bank, and by virtue of his authority he has the power to enter into a contract looking towards the collection of debts due the bank, and can, if the occasion becomes necessary, obligate his principal to pay reasonable collection fees or commissions in furthering the interest of the bank in collecting the sums due it. The facts as stated show that the object of the bank was to collect its debt, and the foreclosure of the mortgage or the sale of the land under the mortgage was the means by which this purpose would be accomplished; and in the furtherance of this object we are clearly of the opinion that the cashier had the authority to enter into a contract to pay a commission for the services and assistance of Noel in furthering the collection.

We find no error in the record and the judgment is affirmed.

*Affirmed.*